H. J. HARPER, RESPONDENT, *v.* ELISHA MALLORY,
APPELLANT.

JUDGMENT BY DEFAULT—INEXCUSABLE NEGLECT.  On a motion to open a judgment
by default, defendant presented his affidavit that he had employed an attorney
to defend him in due time; that the attorney had filed a demurrer and advised
him that it was good and would be sustained, and ample time be given to
answer; that immediately afterwards defendant was called away and unavoid-
ably detained in another county till after the demurrer was overruled, and till
the next day (Sunday) after the five days given to answer had expired; that
on the next day, (Monday) when he came to prepare and file his answer, he
found that default and judgment had been entered against him, and that he
had a meritorious defense; and his attorney also presented an affidavit that

Harper *v.* Mallory.

during the five days allowed to answer, he had made repeated efforts to advise with the defendant, but without success; and that he had every reason to suppose, until the evening of the last day, that the time to answer would be extended by consent: *Held,* a case of inexcusable negligence, and that the refusal of the court below to open the default and judgment was proper.

HOWE *v.* COLDREN, ANTE, p. 171, so far as the Supreme Court refused to interfere with the order of the court below in setting aside the default in that case, was correctly decided; but the opinion contains many *dicta* on the subject of defaults which are not applicable to the facts involved therein, and are therefore not authority.

APPEAL from the District Court of the Second Judicial District, Douglas County.

Action to recover the sum of seven hundred and seventy dollars and fifty cents for work, labor, and services performed in the year 1867, at defendant's request, in floating timber down Carson River from various points to Empire City, in Douglas County.

*H. Doyle* and *R. M. Clarke,* for Appellant.

*R. N. Allen,* for Respondent.

By the Court, WHITMAN, J.

This is an appeal on the part of defendant from an order of the District Court of the Second Judicial District, overruling his demurrer; from the judgment entered against him, and from the order of the Court denying his motion to vacate and set aside his default and judgment thereon. No point has been presented on the first two grounds of appeal.

The demurrer was properly overruled. It was upon its face for delay, and the District Court, upon overruling it, would have been justified in requiring immediate answer. The judgment was regularly taken, nothing to the contrary being shown.

In support of the motion it appeared that complaint was filed March 5th, 1868, summons served on the 19th, and demurrer filed on the 24th of the same month; overruled May 4th, 1868; five days given to answer. Default and judgment entered May 11th.

On that day defendant showed by affidavit to the Court that in

Harper *v.* Mallory.

March, after service of summons, he employed an attorney in the case, who filed a demurrer, and advised him "that the same was good, and would be sustained by the Court, and that ample time could and would be granted to answer." That immediately thereafter, and before he had time to consult his attorney touching his defense, he was called away from Douglas County, his place of residence and the place of trial, to Storey County, where he was unavoidably detained until the evening of May 10th, when he first discovered that the demurrer had been overruled. That on the morning of the 11th, coming to prepare and file his answer, he learned that default and judgment had been entered against him ; that a meritorious defense exists to the action, presented in the form of an answer, and made part of his affidavit.

The attorney added that during the week ensuing the overruling of the demurrer he made "repeated efforts to see and advise with his client, but to no purpose, and that until about seven and a half o'clock P.M. Saturday, May 9th, he had every reason to believe the time to answer would be extended by stipulation."

This showing presents a case of inexcusable negligence, which does not come within the rule of *Howe* v. *Coldren, administrator, etc., (ante,* p. 171.)

In that case the Court decided that no such extraordinary circumstances appeared as would warrant its interposition, reversing the order of the District Court setting aside a default. In the decision we concur, but we do not endorse many *dicta* of the opinion upon the subject of default, which are not applicable to the facts of the case, and which, therefore, can constitute no portion of the decision.

It is upon these, and not on the decision, this Court would act should it reverse this case. If the default herein should be set aside, it would be difficult to imagine a case where one should stand.

The order of the District Court is affirmed.

By JOHNSON, J., dissenting.

In this case, with my views of the law bearing upon the facts as they are presented to us, I am compelled to dissent from the judgment pronounced by my associates. I think the Court below erred

in its order refusing to set aside the judgment and default and allow defendant to be heard on his answer to the merits of the action.

The application to set aside such judgment and default was made in pursuance of Section 68 of the Practice Act, which authorizes " the Court, upon such terms as may be just, and upon payment of costs, to relieve a party or his legal representatives from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect "; and the particular ground which is claimed is " excusable neglect " in not answering the complaint in due time.

The record of this case, and the admissions of counsel upon the hearing of the appeal, present the facts we are to consider about as follows: When the regular term of the District Court for Douglas County convened at Genoa, the county-seat, on Monday, the 4th of May, this case was pending in said Court, on complaint and defendant's demurrer thereto. On that day the demurrer was overruled; five days were allowed in which to answer; the case was set for trial on the following Monday; the Court then adjourned over until that day; and thereupon the presiding Judge went to his home in Carson, some fourteen miles distant, where he remained during the week. The attorneys all resided at Genoa, and the defendant about three miles from there. The defendant's attorney, immediately upon the overruling of such demurrer, wrote to his client advising him of the fact, and of the time when the answer should be made, and sent the letter to the residence of defendant, whence he supposed it would most readily reach him. That defendant did not receive the letter until he returned home, on Sunday evening, May 10th; and otherwise had no advice as to the proceedings in the case. On the next morning, and before the opening of Court, defendant went to Genoa to answer the complaint, and found that plaintiff's attorneys had caused default and judgment to be entered by the Clerk. The same day defendant, upon affidavits and answer to the merits of the action, moved to set aside and vacate such judgment and default, and proposed, if his motion was granted, to go to trial at once. It furthermore appears that defendant's attorney had no knowledge of the matters which

constituted the defense; that he applied to plaintiff's attorney, on Saturday evening, the last day given to answer, for an extension of time until the morning set for trial, and not until about half-past seven in the evening did he ascertain that such extension would not be given, and the absence of the Judge of the Court prevented an application to him for such purpose.

Now in view of these facts let us see what the practice has been in such cases, so that, if possible, whilst administering justice, precedent shall not be disregarded.    With us the code applicable to such proceedings seems to proceed on the same general principles which prevailed at common law, except that there is no discretion left to the Court as to matter of costs.    Under the old practice, where a regular judgment by default had been entered, if the defendant applied promptly, upon sufficient affidavits of merits, to set aside the judgment, the Court or Judge would almost of course set aside such judgment, on payment of costs, and pleading an issuable plea, and agreeing to take short notice of trial, and any other reasonable terms the Court or Judge might in each case think fit to impose.    (3 Chitty's General Practice, 681.)

This general principle was also recognized in New York, and a default set aside, under circumstances far less excusable than are shown in this case.    In *Davenport v. Herris,* (6 Johnson, 131) the default was set aside, where it appeared that the writ was returnable at the preceding term, and the excuse of defendant was that he was so much engaged in other business that he omitted to employ an attorney to defend the suit until after default had been regularly taken; also stated that he had a good and substantial defense on the merits, as he was advised, etc.    The Court (Thompson, J.) said, in setting aside the default, " we have relaxed the practice so far in setting aside defaults, that I am disposed to extend it, in every case, as far as we do in ejectment suits, and to set aside a default, whenever a party swears to a defense on the merits, and no opportunity for a trial has been lost."    In support of the view then taken by the Court, English authority was cited to the effect that " the Court of King's Bench will set aside a judgment by default, though *regular,* when the plaintiff has not lost a trial, upon an affidavit of merits, pleading issuable *instanter,* and

upon payment of costs, and by *instanter* is meant within twenty-four hours."

By statute in New York, also in Indiana, it is provided that " the Court may, *in its discretion*, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him, through his mistake, inadvertence, surprise, or excusable neglect." (New York Pr. Act, Sec. 174; 2 R. S. Indiana, 48, Sec. 99.)

It will be observed that the statutes last quoted differ from those of California and this State, in the *discretion* with which their Courts may exercise in granting or refusing such applications.

Concerning this feature of the New York Code, Whitaker in his treatise on Civil Practice says : " The extensive powers here conferred upon the Court have been most largely and liberally exercised, in cases where judgment has been entered for want of an answer, or on default, or where an inquest has been taken. * * * * Whenever any case has been reasonably capable of being reduced to any of the four categories laid down in the section in question, *i.e.*, those of mistake, inadvertence, surprise, or excusable neglect, and the application has been made in good faith ; relief has as a general rule been always afforded, and in many cases the rule has been stretched to the utmost extent of liberality." (Sec. 2, Whitaker's Practice, 78, and other authorities there cited ; Bing. on Judgment, 22 ; 17 Abbott's Pr. R. 43.)

In looking through the New York and Indiana Reports I find that frequently they distinguish between an order of a lower Court setting aside—and one refusing to set aside—a judgment ; and the distinction seems to be made—especially in Indiana—upon the wording of the statute, that " the Court may *in its discretion* set aside, etc." Under that statute, the principle is stated as follows : " Where a discretionary power is vested in an inferior Court, there must be a plain case of the abuse of that discretion, in order to justify the interference of the appellate Court." (*Morris* v. *Groves,* 2 Ind. 354; *Deter* v. *The State,* 4 Ib. 200 ; *Heberd* v. *Myres,* 5 Ib. 94; *Carlisle* v. *Wilkerson,* 12 Ib. 93.)

In California, where Sec. 68 of the Practice Act being the same

as ours, it has been passed on by the Supreme Court, the result of my examination of the reported cases is this : that although frequently general principles have been stated, yet the appeals have been determined on the facts as they appeared in each case.    In some instances the Court speaks of " a legal " or " proper discretion " in the Court below, and manifest some reluctance in interfering with the order of the lower Court, on the ground that it is more or less a matter of discretion in the subordinate Court, the granting or refusing such orders—more especially, however, when the motion has been granted in setting aside the judgment.    In a recent case, where the Court referred to its previous decisions, involving questions of a like character, it is remarked in the opinion, that " orders like the present, in legal parlance, rest very much in the discretion of the Court below."    (See *Bailey* v. *Taaffe*, 29 Cal. 422, and cases cited in the opinion.)

But the learned Judge, speaking for the Court, further on says that " when an appellate Court is satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other."    (Ib.)

Clearly it is the duty of an appellate Court, as I view it, in all such cases to dispose of the appeal in accordance with the same general principles of right, as are applied in reviewing other cases brought before it, without distinguishing at all between an order vacating, and an order refusing to vacate, a judgment of a lower Court.    The case of *Howe.* v.* Coldren, Admr.*, recently decided by this Court has been referred to.

But whether the views of the writer as expressed in that opinion upon all the points shall be accepted or not, is of no special moment now, as I think the decision, considered only with reference to the facts in the case, if it shall at all be held as a precedent—requires that the order appealed from in this case should be reversed, for certainly it does seem to me that the showing there made in excuse for not filing an answer in time, both upon the part of attorney and client, is infinitely weaker than is shown here, and yet a full Court sustained the order made in the District Court setting aside the judgment.    I shall not recapitulate all the facts in that case, as

they will be seen by an examination of the opinion.  It simply amounts to this—that the attorney mistook the time for answering, and a default and judgment were regularly entered for want of an answer.  At the next term of the Court, upon motion of defendant, upon affidavit, the judgment and default were set aside and answer allowed, conditioned that defendant should pay all costs to date.  I concurred in the order of affirmance.  I then thought it right, and have the same opinion now.

The facts in this case need not be repeated.  With the merits or demerits of plaintiff's demand we have nothing to do, except as it is incidentally involved in this proceeding.  We know that plaintiff, by the neglect of defendant in answering, has obtained a judgment by default to the amount of several hundred dollars, upon certain money demands which defendant swears he justly owes no part of. The attorney for defendant did all that could be reasonably required of him, in his duty to his client, in preventing a default.  He applied to the adverse attorney for time—he wrote to his client, urging his attendance, and could not well apply to the Judge of the Court for an extension, at the last hour, Saturday night, when such Judge was fourteen miles away.

The defendant evinced his good faith and purpose to have the case promptly tried on the merits, as he proposed that it be tried on the same day it was originally set for trial, so that no possible inconvenience could be suffered by plaintiff, nor his position different than if the answer had been forthcoming on Saturday night. A trial being had on the merits, if his demand was just the Court or jury would so pronounce it, and defendant be compelled to pay ; but the judgment taken by default leaves defendant no option, but he must pay, be the demand right or wrong.  Under such circumstances the power of the Court found in the section (68) of the law referred to, " should be freely and liberally exercised, so as to dispose of cases upon their substantial merits, and without unreasonable delay, regarding rather the right, than the mere technical advantages."

I conclude that, under the circumstances of this case, it is too harsh a judgment to say that defendant should not have the opportunity to be heard upon his defense to the action, and that the or-

der of the Court should have been to set aside default and judgment upon defendant's paying full costs.

For the reasons here stated I dissent from the conclusions reached by my associates of the Court.